## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WENDY FRANCIS,**

     **Plaintiff,**

**v.**                                    **Case No. 8:20-cv-3105-AAS**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

     **Defendant.**
_____/

## ORDER

Wendy Francis requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the parties' joint memorandum, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Ms. Francis applied for DIB and alleged disability beginning on August 9, 2015. (Tr. 82–94). Disability examiners denied Ms. Francis's applications initially and after reconsideration. (Tr. 78, 80). At Ms. Francis's request, the ALJ held a hearing on February 28, 2017. (Tr. 29–77). The ALJ issued an

unfavorable decision to Ms. Francis on May 5, 2017. (Tr. 7–26).

On September 18, 2017, the Appeals Council denied Ms. Francis's request for review, making the ALJ's decision final. (Tr. 1–6). On March 27, 2019, Magistrate Judge Anthony E. Porcelli reversed the ALJ's decision and remanded Ms. Francis' case because the ALJ did not properly evaluate medical opinions from Steven S. Baker, M.D., and Robert Hansell, M.D. (Tr. 1051–1053). On remand, the ALJ again issued an unfavorable decision on June 3, 2020. (Tr. 946–963). On October 30, 2020, the Appeals Council again denied Ms. Francis' request for review, making the ALJ's decision final. (Tr. 937–942). Ms. Francis requests review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Ms. Francis was thirty-nine years old on her alleged onset date of August 9, 2015 and on the date she applied for DIB, August 19, 2015. (Tr. 82). Ms. Francis has past relevant work as a cashier. (Tr. 93, 975).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a) First, if a claimant is engaged in substantial gainful

---

[1] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4).

activity,[2] she is not disabled. 20 C.F.R. §§ 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[3] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g).

The ALJ determined Ms. Francis did not engage in substantial gainful activity during the period between her alleged onset date, August 9, 2015, and her date last insured, December 31, 2017. (Tr. 949). The ALJ found Ms. Francis

---

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572.

[3] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. §§ 404.1545(a)(1).

3

had the following severe impairments: degenerative disc disease (DDD) of the cervical spine status-post anterior cervical discectomy and fusion (ACDF); cervicalgia; status-post chondromalacia of the bilateral knees with bilateral releases; history of migraines; chronic obstructive pulmonary disease (COPD); obesity; major depressive disorder (MDD); generalized anxiety disorder (GAD); post-traumatic stress disorder (PTSD). (*Id.*). But the ALJ found none of Ms. Francis' impairments or any combination of her impairments met or medically equaled the severity of an impairment in the Listings. (*Id.*).

The ALJ found Ms. Francis had the RFC to perform sedentary work[4] the following nonexertional limitations:

> there must be a sit/stand option allowing this person to alternate between sitting and standing positions every 30 to 60 minutes for a brief period of two to three minutes while still attaining the sitting, standing, and walking required of the sedentary exertional limit; occasional pushing and pulling with the bilateral upper extremities; occasional foot control operation with the bilateral lower extremities; never climb ramps, stairs, ladders, ropes or scaffolds or crawl; occasionally balance, stoop, kneel and crouch; occasional reaching overhead bilaterally; frequent reaching in all other directions bilaterally; frequent handling and fingering bilaterally; avoid concentrated exposure to extreme temperatures, excessive noise, and excessive vibration, as well as irritants, such as fumes, odors, dust, gases, and poorly ventilated areas; avoid all exposure to hazardous machinery and unprotected heights; work

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a).

> is limited to simple, routine, repetitive tasks in a low stress job, defined as having only occasional decision making and occasional changes in the work setting with no production rate or pace work comparable to an assembly line where one worker's pace affects the entire production process; only occasional in-person interaction with the public, coworkers, and supervisors while telephonic, electronic and computer interaction are not limited.

(Tr. 951).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Francis could not perform her past relevant work. (Tr. 961). The ALJ then determined Ms. Francis could perform other jobs existing in significant numbers in the national economy, specifically as a clerical assistant, cuff holder, and dowel inspector. (Tr. 962). As a result, the ALJ found Ms. Francis not disabled from August 9, 2015, through the date on which Ms. Francis was last insured, December 31, 2017. (Tr. 963).

## III.   ANALYSIS

### A.   Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.   Issues on Appeal

Ms. Francis raises two issues on appeal: (1) whether the ALJ's reasons for giving little weight to Asif Kamal, M.D.'s February 3, 2016 medical opinion are supported by substantial evidence (Doc. 18, pp. 19–22); and (2) whether the ALJ's reasons for giving little weight to Steven S. Baker, M.D.'s October 23, 2015 medical opinion and Robert Hansell, M.D.'s March 10, 2016 medical opinion are supported by substantial evidence (*Id*. at 30–32).

**1. Whether the ALJ's reasons for giving little weight to Dr. Kamal's medical opinion are supported by substantial evidence.**

Ms. Francis argues substantial evidence does not support the ALJ's decision to assign little weight to Dr. Kamal's February 3, 2016 medical opinion. (*Id.* at 19). Ms. Francis contests three positions taken by the ALJ in concluding Dr. Kamal's medical opinion was unpersuasive: (1) forms used by Dr. Kamal in evaluating Ms. Francis's status were not persuasive (*Id.* at 20); (2) Dr. Kamal's assessment of debilitating levels of pain and seriously reduced range of sedentary work in the physical RFC was uncorroborated by the record's medical evidence (*Id.* at 20–22); and (3) Dr. Kamal's medical opinion in the physical RFC contradicted his assessment of Ms. Francis having a "fair" prognosis (*Id.* at 22). The court will address each point in turn.

**a. Physical RFC Forms**

As part of Dr. Kamal's February 3, 2016 evaluation of Ms. Francis, Ms. Francis answered two sixteen-question forms on her physical status. (Tr. 519–527). Ms. Francis argues, because fifteen of the sixteen questions were answered on both forms with only parts of one question left blank, both forms supported the conclusion that Ms. Francis could not perform low-stress jobs. (Doc. 18, p. 20).

The ALJ concluded the questionnaires were "largely checkbox or fill-in-the-blank, not completely filled out, and accompanied by little narrative

support." (Doc. 18, p. 25) (*citing* (Tr. 519–527, 959)). Sections such as "Date," "Printed/Typed name" and "Address" were left blank. (Tr. 519–527). Other questions like what "percentage of time during an 8-hour working day should [Ms. Francis's] leg(s) be elevated" and "[w]hile engaging in occasional standing/walking, must your patient use a cane or other assistive device" were also left blank. (Tr. 523). The ALJ concluded the scant nature of the information disclosed by these forms and their lack of narrative support "limits the weight to be afforded it." (Tr. 959). The ALJ's conclusion that the physical analysis forms were entitled to little weight is supported by substantial evidence.

### b. Corroborated Evidence

Ms. Francis argues medical evidence in the record confirms her subjective allegations of pain as stated in Dr. Kamal's February 3, 2016 evaluation. (Doc. 18, p. 21). Ms. Francis references Dr. Kamal's December 20, 2017 medical opinion that stated she had a limited range of motion and lumbar tenderness and consultative examiner Pascal Bordy, M.D.'s December 19, 2019 medical opinion that Ms. Francis was greatly limited in her ability to walk, stand, and sit to argue her subjective allegations of pain are supported by the record. (Doc. 18, p. 22) (*citing* (Tr. 1212)).

Dr. Kamal's progress notes detailing Ms. Francis's overall health largely range from January 2016 to January 2017. (Tr. 677–678, 680, 685–686, 688–

689, 691–693, 695–696, 699–700, 703–704, 707–708). While Ms. Francis focuses on Dr. Kamal's physical RFC analysis from February 3, 2016 (Tr. 519–527), the ALJ concluded these findings were made when Ms. Francis was recovering from her knee surgery and back pain resulting from a fall at home in early 2016. (Tr. 959).

For example, Dr. Kamal's progress notes on November 14, 2016, December 20, 2016, and January 18, 2017 list Ms. Francis's general appearance as "well-appearing, well-developed, no acute distress" and her gait as "normal" with normal upper extremity joints and bilateral motor strength. (Tr. 677–678, 680, 685–686). The ALJ concluded Ms. Francis's allegedly "debilitating levels of pain and seriously reduced range of work" were not supported by Dr. Kamal's use of "conservative treatment and stable pain regiments." (Tr. 959). The ALJ further noted Ms. Francis's subjective allegations of pain were at odds with Ms. Francis's admission that she had been driving from Alabama to Florida on a consistent basis to aid in the care of her granddaughter as late as November 2017. (Tr. 957, 1288). Thus, the ALJ concluded "driving and childcare would require significant periods of time without elevating her legs as well as lift[ing], carry[ing], and perform[ing] postural maneuvers." (Tr. 960).

Finally, while the ALJ acknowledged Ms. Francis's subjective allegations of pain "significantly worsened" between her date last insured and Dr. Bordy's

December 19, 2019 examination of Ms. Francis, the ALJ found the examination's conclusions were internally inconsistent. (Tr. 961 (*citing* (Tr. 1600)) (noting Dr. Bordy "opined that [Ms. Francis] could never climb, kneel, crouch or crawl" but also determined Ms. Francis can "squat all the way"). This, coupled with the fact that this examination occurred nearly two years after Ms. Francis's date last insured, led the ALJ to conclude Dr. Bordy's December 2019 evaluation of Ms. Francis warranted little weight. (Tr. 961). *See also Jones v. Colvin*, No. 3:15-cv-208-MMH-MCR, 2015 WL 9694507, at *6 (M.D. Fla. Dec. 15, 2015) ("[O]pinions rendered after Plaintiff's date of last insured are of little value to the ALJ's disability determination"). Thus, substantial evidence supports the ALJ's conclusion that Dr. Kamal's more restrictive medical opinions were not corroborated by the medical evidence in the record.

### c. Fair Prognosis

Ms. Francis argues the ALJ erred in suggesting Dr. Kamal's more restrictive February 3, 2016 medical opinion was inconsistent with Dr. Kamal's statement that Ms. Francis's prognosis was "fair." (Doc. 18, p. 22). Ms. Francis contends Dr. Kamal's prognosis referred to her likelihood of future improvement, not her current condition, and that the term "fair" is vague and thus does not contradict her significant physical limitations. (*Id.*).

After summarizing Dr. Kamal's February 3, 2016 opinion, the ALJ concluded Dr. Kamal's "dire findings (including the conclusion that [Ms.

Francis] would miss more than four days of work per month and can never perform any postural maneuvers) are internally inconsistent with Dr. Kamal's conclusion that [Ms. Francis's] prognosis is 'fair'." (Tr. 959) (*citing* (Tr. 519–527)). As addressed above, the ALJ concluded the check-in-the-box questionnaires partially left blank by Ms. Francis and Dr. Kamal lacked narrative support and were unpersuasive. (Tr. 959). The ALJ further concluded Dr. Kamal's February 3, 2016 medical opinion stating Ms. Francis would be "incapable of even 'low stress jobs'" was unpersuasive because Dr. Kamal's opinion did not define the term "low stress job". (Tr. 959). The ALJ's conclusion that the lack of narrative support and inconsistency between the "fair" prognosis and Dr. Kamal's other findings rendered Dr. Kamal's analysis unpersuasive is supported by substantial evidence. Thus, the ALJ's decision to assign little weight to Dr. Kamal's February 3, 2016 medical opinion is supported by substantial evidence.

## 2. Whether the ALJ's reasons for giving little weight to Dr. Baker's and Dr. Hansell's medical opinions are supported by substantial evidence.

Ms. Francis argues substantial evidence does not support the ALJ's decision to assign little weight to Dr. Baker's October 23, 2015 medical opinion and Dr. Hansell's March 10, 2016 medical opinion. (Doc. 18, p. 30). Both opinions advised Ms. Francis to keep her legs elevated when she is at rest. (Tr. 496, 570). Ms. Francis argues that the ALJ erred in stating the doctors'

restrictions on elevating her legs at rest were meant to only apply to her post-surgical recovery period. (Doc. 18, p. 30) (*citing* (Tr. 959–961)). Ms. Francis argues neither Dr. Baker nor Dr. Hansell advised her that the restrictions were temporary, and if the doctors meant to apply a time limit to their restrictions, then a time limit would have been listed in their notes, and no such restrictions were listed in their notes. (Doc. 18, p. 30).

The ALJ concluded the restrictions on Ms. Francis's leg elevation were meant to apply to Ms. Francis's recovery period as opposed to a lifetime limitation. (Tr. 959). The ALJ referenced Dr. Baker's reports of Ms. Francis "walk[ing] with a normal gait unassisted, with normal strength of the lower extremities" and observations that Ms. Francis presented "well groomed" and "healthy," with "no apparent deformities" and a "well-coordinated gait" following her surgeries on both her right and left knees. (Tr. 493, 960–961). The ALJ further mentions Ms. Francis moved to Alabama to care for her granddaughter within 12 months of her surgeries and concluded the request to keep her leg elevated "merely provide[d] the common sense advice one would expect when recovering from such surgery." (Tr. 960). Thus, the ALJ's decision to assign little weight to Dr. Baker's October 23, 2015 medical opinion and Dr. Hansell's March 10, 2016 medical opinion was supported by substantial evidence.

## IV.    CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and

the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on July 19, 2022.

AMANDA ARNOLD SANSONE
United States Magistrate Judge